O

# UNITED STATES DISTRICT COURT
# CENTRAL DISTRICT OF CALIFORNIA

**CIVIL MINUTES - GENERAL**

| Case No. | CV 10-03983 AHM (FFMx) | Date | June 12, 2012 |
|---|---|---|---|

| Title | AMERICAN OPTOMETRIC SOCIETY, INC. v. AMERICAN BOARD OF OPTOMETRY, INC. |
|---|---|

| Present: The Honorable | A. HOWARD MATZ, U.S. DISTRICT JUDGE | | |
|---|---|---|---|
| Stephen Montes | Not Reported | |
| Deputy Clerk | Court Reporter / Recorder | Tape No. |

Attorneys **NOT** Present for Plaintiff:  Attorneys **NOT** Present for Defendant:

**Proceedings:** IN CHAMBERS (No Proceedings Held)

Defendant American Board of Optometry (the "ABO") has moved for summary judgment against Plaintiff American Optometric Society (the "AOS").[1] For the reasons stated below, the Court GRANTS the ABO's motion with respect to the AOS's claims under state law and DENIES the ABO's motion with respect to the AOS's claim under the Lanham Act.

## I. INTRODUCTION

Medical doctors have long used the term "board certified" or "board certification" to denote specialized competence, expertise, and training. As the American Board of Medical Specialties ("ABMS") notes, "board certification . . . demonstrate[s] a physician's exceptional expertise in a particular specialty and/or subspecialty of medical practice." (Pl.'s Ex. 20.) Board certification involves "a rigorous process of testing and peer evaluation that is designed and administered by specialists in the specific area of medicine." (*Id.*)

Optometrists are professionals who perform eye exams and check for vision problems and diseases, but they are not physicians. *See* Bureau of Labor Statistics, United States Department of Labor, *Optometrists*, Occupational Outlook Handbook (June 8, 2012), http://www.bls.gov/ooh/Healthcare/Optometrists.htm. Optometrists also prescribe eyeglasses and contact lenses, as needed. *See id.*

---

[1] Dkt. 138.

O

# UNITED STATES DISTRICT COURT
# CENTRAL DISTRICT OF CALIFORNIA

**CIVIL MINUTES - GENERAL**

| Case No. | CV 10-03983 AHM (FFMx) | Date | June 12, 2012 |
|---|---|---|---|
| Title | AMERICAN OPTOMETRIC SOCIETY, INC. v. AMERICAN BOARD OF OPTOMETRY, INC. | | |

The crux of the remaining dispute in this case is whether it is false or misleading for optometrists to use the terms "board certified" and "board certification."[2] Defendant ABO is a non-profit organization that was formed in 2009 for the purpose of administering a "board certification" program for optometrists. (Def.'s Resp. to Pl.'s Statement of Genuine Issues ("Resp. to SGI") ¶ 2.) Plaintiff AOS, another non-profit organization, represents optometrists who are opposed to the ABO's board certification program. (*See* Resp. to SGI ¶ 1.)

To challenge the ABO's use of the terms "board certified" and "board certification," the AOS has raised three claims: (1) false advertising under section 43(a) of the Lanham Act; (2) false advertising under California Business & Professions Code section 17535; and (3) unfair competition under California Business & Professions Code section 17200. The AOS seeks no damages or monetary relief. Instead, the AOS seeks injunctive relief only. (Resp. to SGI ¶ 10.)[3]

The AOS asserts that the terms "board certification" and "board certified" carry a special meaning in the fields of healthcare and medicine. Specifically, the AOS contends that these terms imply "education, training, and experience over and above what others licensed to practice the same profession receive." (Resp. to SGI ¶ 34.) In support of this position, the AOS offers four pieces of evidence.

First, David Cockrell, the ABO's corporate designee, admitted in his deposition that he believes that people ask for and request board certified practitioners because they believe them to be more competent.[4] (Pl.'s Ex. 11 at 261:8–24.)

---

[2] The AOS had initially challenged the ABO's publication of a number of additional statements. On September 2, 2011, the Court approved a consent decree enjoining the ABO from publishing these statements. *See* Dkt. 112. Accordingly, these statements are no longer before the Court.

[3] The extremely broad injunctive relief prayed for at page sixteen of the First Amended Complaint would enjoin the ABO and all those affiliated with it "from making any representation to the public . . . through any medium, which refers to its program or certification as constituting 'board certification' or using the phrase 'board certified' to describe its members."

[4] Cockrell was deposed both as the corporate designee and in his individual capacity. A fair reading of his deposition transcript indicates that he answered this question in his individual capacity.

# UNITED STATES DISTRICT COURT
# CENTRAL DISTRICT OF CALIFORNIA

**CIVIL MINUTES - GENERAL**

| Case No. | CV 10-03983 AHM (FFMx) | Date | June 12, 2012 |
|---|---|---|---|
| Title | AMERICAN OPTOMETRIC SOCIETY, INC. v. AMERICAN BOARD OF OPTOMETRY, INC. | | |

Second, in his deposition, Dr. Jeffery Weaver, the ABO's Executive Director, testified that even before the ABO had established its board certification program and even before it had disseminated any information about its certification program, members of the public began to call him asking for board certified optometrists. (Pl.'s Ex. 14 at 33–36.) The AOS contends that these calls indicate that the public attaches a special meaning to the term "board certified."

Third, the AOS points to a survey conducted by its expert, Thomas Maronick. Maronick's survey shows that more than half of the surveyed consumers of eye care services believe that a board certified optometrist is more competent that one who is not. (Pl.'s Ex. 1 at 10.) In addition sixty-one percent of those surveyed believe that a board certified optometrist has more training. (Pl.'s Ex. 1 at 13.) The ABO contends that Maronick's survey is unreliable and should be excluded. (Def.'s Mot. *in Limine* No. 1, Dkt. 154, which has been noticed for a hearing on June 25, 2012.)

Fourth, the AOS contends that the ABO's communications are designed to lead consumers to believe that the ABO's "board certification" is equivalent to the board certification received by physicians. For example, in one advertisement on its website the ABO includes the following quote from an optometrist:

> Board Certification is a meaningful term to the public and to my patients. I now have the chance to participate in a process that other health professionals have had for many years.

(Pl.'s Ex. 29 at 2.)

Another advertisement states:

> My residency has paid off in many ways—and now I can proudly tell my patients I am board certified. It is a term they recognize, and will help me stay current over the next ten years.

(Pl.'s Ex. 7 at 2.)

---

(*See* Pl.'s Ex. 11 at 261:8–24.)

O

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

**CIVIL MINUTES - GENERAL**

| Case No. | CV 10-03983 AHM (FFMx) | Date | June 12, 2012 |
|---|---|---|---|
| Title | AMERICAN OPTOMETRIC SOCIETY, INC. v. AMERICAN BOARD OF OPTOMETRY, INC. | | |

A third advertisement is similar:

> All Doctors of Optometry strive for excellence. Board certification provides an opportunity to demonstrate one's commitment to patient care that is easily identifiable to the public.

(Pl.'s Ex. 29 at 3.)

According to the AOS, the ABO's board certification lacks the essential characteristics of a medical board certification program. To support this argument, the AOS points to the deposition testimony of Cockrell, the ABO's corporate designee. Cockrell admitted that the ABO's certification does not demonstrate that an ABO certified optometrist is a specialist as compared to a non-ABO certified optometrist. (Ex. 11 at 118.) In addition, Cockrell admitted that ABO certification does not demonstrate that a certified optometrist has demonstrated that he or she has knowledge, skills and abilities that a non-certified optometrist does not have. (Ex. 11 at 120–21.)

The ABO contends that it is entitled to summary judgment on two bases. First, the ABO argues that the AOS lacks standing to assert any of its claims. Second, the ABO claims that the AOS lacks sufficient evidence to create a genuine issue of material fact as to whether the ABO's statements are false or misleading.

## II. LEGAL STANDARD

Federal Rule of Civil Procedure 56 provides for summary judgment when "the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law. " The moving party bears the initial burden of demonstrating the absence of a "genuine issue of material fact for trial." *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 256 (1986). A fact is material if it could affect the outcome of the suit under the governing substantive law. *Id.* at 248. The burden then shifts to the nonmoving party to establish, beyond the pleadings, that there is a genuine issue for trial. *Celotex Corp. v. Catrett*, 477 U.S. 317, 324 (1986).

"When the party moving for summary judgment would bear the burden of proof at trial, it must come forward with evidence which would entitle it to a directed verdict if the evidence went uncontroverted at trial. In such a case, the moving party has the initial

O

# UNITED STATES DISTRICT COURT
# CENTRAL DISTRICT OF CALIFORNIA

**CIVIL MINUTES - GENERAL**

| Case No. | CV 10-03983 AHM (FFMx) | Date | June 12, 2012 |
|---|---|---|---|
| Title | AMERICAN OPTOMETRIC SOCIETY, INC. v. AMERICAN BOARD OF OPTOMETRY, INC. | | |

burden of establishing the absence of a genuine issue of fact on each issue material to its case." *C.A.R. Transp. Brokerage Co., Inc. v. Darden Rests., Inc.*, 213 F.3d 474, 480 (9th Cir. 2000) (citations omitted). In contrast, when the non-moving party bears the burden of proving the claim or defense, the moving party can meet its burden by pointing out the absence of evidence from the non-moving party. The moving party need not disprove the other party's case. *See Celotex*, 477 U.S. at 325. Thus, "[s]ummary judgment for a defendant is appropriate when the plaintiff 'fails to make a showing sufficient to establish the existence of an element essential to [his] case, and on which [he] will bear the burden of proof at trial.'" *Cleveland v. Policy Mgmt. Sys. Corp.*, 526 U.S. 795, 805-06 (1999) (citing *Celotex*, 477 U.S. at 322).

When the moving party meets its burden, the "opposing party may not rely merely on allegations or denials in its own pleading; rather, its response must—by affidavits or as otherwise provided in this rule—set out specific facts showing a genuine issue for trial." Fed. R. Civ. P. 56(e). Summary judgment will be entered against the opposing party if that party does not present such specific facts. *Id*. Only admissible evidence may be considered in deciding a motion for summary judgment. *Id.*; *Beyene v. Coleman Sec. Servs., Inc.*, 854 F.2d 1179, 1181 (9th Cir. 1988).

"[I]n ruling on a motion for summary judgment, the nonmoving party's evidence 'is to be believed, and all justifiable inferences are to be drawn in [that party's] favor.'" *Hunt v. Cromartie*, 526 U.S. 541, 552 (1999) (quoting *Anderson*, 477 U.S. at 255). But the non-moving party must come forward with more than "the mere existence of a scintilla of evidence." *Anderson*, 477 U.S. at 252. Thus, "[w]here the record taken as a whole could not lead a rational trier of fact to find for the nonmoving party, there is no genuine issue for trial." *Matsushita Elec. Indus. Co., Ltd. v. Zenith Radio Corp.*, 475 U.S. 574, 587 (1986) (citation omitted).

## III. DISCUSSION

### A. Standing

#### 1. The AOS lacks standing to assert its state law claims

O

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

**CIVIL MINUTES - GENERAL**

| Case No. | CV 10-03983 AHM (FFMx) | Date | June 12, 2012 |
|---|---|---|---|
| Title | AMERICAN OPTOMETRIC SOCIETY, INC. v. AMERICAN BOARD OF OPTOMETRY, INC. | | |

The ABO challenges the AOS's standing to assert state law claims for false advertising and unfair competition. In its opposition to the ABO's motion for summary judgment, the AOS admits that it lacks standing to pursue these claims. (Opp. at 18.) Accordingly, the Court grants the ABO summary adjudication on the AOS's state law claims.

### 2. The AOS has associational standing to assert a false advertising claim under the Lanham Act

The ABO also challenges the AOS's standing to assert a false advertising claim under the Lanham Act. In response, the AOS contends that its members have been injured by the ABO's statements. According to the AOS, under the doctrine of "associational standing," it has standing to vindicate its members' rights under the Lanham Act. The ABO agrees that under the doctrine of associational standing, a trade association may have standing to assert its members' rights. But the ABO points out that an association has standing to assert its members rights only if those members have standing to sue in their own right. The ABO contends that in this case the AOS's members do not have standing to sue in their own right.

"[A]n association has standing to bring suit on behalf of its members when: (a) its members would otherwise have standing to sue in their own right; (b) the interests it seeks to protect are germane to the organization's purpose; and (c) neither the claim asserted nor the relief requested requires the participation of individual members in the lawsuit." *Hunt v. Washington State Apple Adver. Comm'n*, 432 U.S. 333, 343 (1977).[5]

---

[5] Although the doctrine of associational standing arises out of the Supreme Court's Article III standing jurisprudence, it applies to questions of statutory standing as well. In *International Union v. Brock*, 477 U.S. 274 (1986), the Supreme Court explained the benefit and purpose of permitting associations to file suit to vindicate their members' interests: "an association suing to vindicate the interests of its members can draw upon a pre-existing reservoir of expertise and capital." *Brock*, 477 U.S. at 289. Furthermore, the Court explained, the interest and expertise of an association can sharpen the presentation of issues and illuminate difficult questions of fact and law. *Id.* In addition, "the doctrine of associational standing recognizes that the primary reason people join an organization is often to create an effective vehicle for vindicating interests that they share with others." *Id.* For these reasons, the Court permitted the plaintiff, a union, to challenge the Secretary of Labor's interpretation of

O

# UNITED STATES DISTRICT COURT
# CENTRAL DISTRICT OF CALIFORNIA

**CIVIL MINUTES - GENERAL**

| Case No. | CV 10-03983 AHM (FFMx) | Date | June 12, 2012 |
|---|---|---|---|
| Title | AMERICAN OPTOMETRIC SOCIETY, INC. v. AMERICAN BOARD OF OPTOMETRY, INC. | | |

In this case, there is no question that the interests the AOS seeks to protect are germane to its purpose. Indeed, the AOS was formed for the very purpose of opposing the ABO's board certification program. ( Resp. to SGI ¶ 4.) In addition, there is no reason to believe that the AOS's request for injunctive relief requires the participation of its individual members. Thus, the only question is whether the AOS's members have standing in their own right to assert false advertising claims under the Lanham Act.

Section 43(a) of the Lanham Act provides for two bases of liability: false association and false advertising. *Waits v. Frito–Lay Inc.*, 978 F.2d 1093, 1108–10 (9th Cir. 1992). A false association claim arises when a defendant makes false representations as to "the affiliation, connection, or association" of a product or service. 15 U.S.C. § 1125(a)(1)(A). In contrast, a false advertising claim is based on a false representation as to "the nature, characteristics, [or] qualities" of a product or service. § 1125(a)(1)(B). These two causes of action have differing statutory standing requirements. *Jack Russell Terrier Network of N. Cal. v. Am. Kennel Club, Inc.*, 407 F.3d 1027, 1037 (9th Cir. 2005).

The AOS's Lanham Act claim here is based only on the false advertising prong of section 43(a). In the Ninth Circuit, a plaintiff must satisfy a two-part standing test in order to assert a false advertising claim under the Lanham Act. *Id.* First, the plaintiff must show that it suffered "a commercial injury based upon a misrepresentation about a product." *Id.* Second, the plaintiff must show "that the injury is 'competitive,' or harmful to the plaintiff's ability to compete with the defendant." *Id.*

The ABO contends that the AOS's members have not suffered any "competitive" injury at the hands of the ABO because the ABO does not compete with the AOS's members. The ABO stresses that it provides a board certification service while the AOS's members provide optometry services. But the AOS avers that the members of both organizations compete with each other. (Pl.'s Response to SUF ¶ 7.) To this indisputable assertion the ABO merely responds that it has no members. (Resp. to SGI ¶ 7.) This is a dodge. At the hearing, the ABO's counsel attempted to evade acknowledging what is obvious: virtually all optometrists in a given market compete with each other for patients. They may compete for referrals from physicians, from PPOs or

---

a statute where the interpretation would have harmed the union's members.

O

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

**CIVIL MINUTES - GENERAL**

| Case No. | CV 10-03983 AHM (FFMx) | Date | June 12, 2012 |
|---|---|---|---|
| Title | AMERICAN OPTOMETRIC SOCIETY, INC. v. AMERICAN BOARD OF OPTOMETRY, INC. | | |

HMOs, or from self-created promotionals such as websites and advertisements. If their advertising includes a boast that they are board certified, it is because that representation is meant to help them stand out in the marketplace. Because ABO-certified optometrists compete with the AOS's members, AOS members have standing to challenge the ABO's allegedly false statements.

In *Coastal Abstract Service*, the plaintiff, an escrow company, sued a title insurance company and one of its officers for false advertising. *Coastal Abstract Serv., Inc. v. First Am. Title Ins. Co.*, 173 F.3d 725, 728–29 (9th Cir. 1999). The officer challenged the escrow company's standing to assert a claim against him. He claimed that "as an individual" he was not "in competition" with the plaintiff. *Id.* at 734. The Ninth Circuit acknowledged that it had previously suggested that standing to sue for false advertising was limited to competitors. *Id.* (citing *Halicki v. United Artists Commc'ns, Inc.*, 812 F.2d 1213, 1214 (9th Cir. 187). But the court noted that the crux of its decision in *Halicki* was that the victim, although suffering a form of injury to reputation, "had not suffered a *competitive injury*." *Id.* (emphasis in original). Turning to the case before it, the Ninth Circuit noted that the defendant officer "sought by his statements to divert business from the [plaintiff escrow company] to [the defendant title insurance company]." *Id.* In denying the officer's challenge to the plaintiff's standing, the court held that there was no question that the injury allegedly suffered by the escrow company was "competitive" and of "the type that section 43(a) . . . was intended to remedy." *Id.*

Similarly, in *National Services Group*, the defendant challenged the plaintiffs' standing to bring a false advertising claim on the basis that the plaintiffs were not in commercial competition with the defendant. *Natl. Svcs. Grp, Inc. v. Painting & Decorating Contractors of Am., Inc.*, 2006 WL 2035465, at * 3 (C.D. Cal. July 18, 2006). In that case, the defendant was a trade association representing painters and decorators. *Id.* at *1. The plaintiffs, in contrast, were a group of painting companies. The defendant contended that as a trade association it was not in competition with plaintiffs. *Id.* at *3. The district court rejected the defendant's challenge to standing. The court noted that the Ninth Circuit's cases "stand for the proposition that 'competitive injury,' rather than an exact congruence between the business of the plaintiff and defendant, is the key to standing on a Lanham Act product disparagement claim." *Id.* at *4. Furthermore, the court explained that the focus was not on "the structure of [the parties'] businesses, but

O

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

CIVIL MINUTES - GENERAL

| Case No. | CV 10-03983 AHM (FFMx) | Date | June 12, 2012 |
|---|---|---|---|
| Title | AMERICAN OPTOMETRIC SOCIETY, INC. v. AMERICAN BOARD OF OPTOMETRY, INC. | | |

on whether the statements in issue tended to divert business from the plaintiff to the defendant." *Id.*

Even in *Jack Russell Terrier*, the case ABO's counsel relied on at the hearing, the Ninth Circuit held that "for standing pursuant to the 'false advertising' prong of § 43(a) of the Lanham Act . . . a plaintiff must [merely] show (1) a commercial injury based upon a misrepresentation about a product; and (2) that the injury is 'competitive,' *or* harmful to the plaintiff's ability to compete with the defendant." *Jack Russell Terrier*, 407 F.3d at 1037 (emphasis added). The first prong of element two ("that the injury is 'competitive'") is satisfied here and so the second prong is irrelevant; it is not necessary that the ABO and the AOS directly compete with each other.

In this case, the AOS has proffered evidence that the ABO's statements divert business from AOS members to ABO-certified optometrists. ( Resp. to SGI ¶¶ 18, 19.) For example Pamela Miller, a member of the AOS, states in a declaration that she believes that she has lost patients to Dr. Paul Adams, an ABO-certified optometrist who is located close to Miller. (Miller Decl. ¶ 9.) Similarly, Charlie Holt, a member of the AOS, states in a declaration that he believes that he has lost patients to Dr. Chung, an ABO-certified optometrist who is located close to Holt. (Miller Decl. ¶ 11.) Moreover, the ABO's own corporate designee admitted that he believes that people ask for and request board certified practitioners because they believe them to be more competent. (Pl.'s Ex. 11 at 261:8–24.) This "diversion of business" is the exact type of competitive injury that *Coastal Abstract Services* and *National Services Group* found to be cognizable.

For the reasons state above, the Court finds that the AOS's members have standing to assert a claim of false advertising against the ABO. Accordingly, under the doctrine of associational standing, the AOS also has standing to assert this claim.

B. **Lanham Act Claim**

The Court denies the ABO's motion for summary judgment because there is a genuine issue of material fact as to whether it is false or misleading for the ABO to use the terms "board certified" and "board certification."

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

**CIVIL MINUTES - GENERAL**

| Case No. | CV 10-03983 AHM (FFMx) | Date | June 12, 2012 |
|---|---|---|---|
| Title | AMERICAN OPTOMETRIC SOCIETY, INC. v. AMERICAN BOARD OF OPTOMETRY, INC. | | |

To prevail on a false advertising claim under the Lanham Act a plaintiff must prove the following elements: "(1) the defendant made a false statement either about the plaintiff's or its own product; (2) the statement was made in a commercial advertisement or promotion; (3) the statement actually deceived or had the tendency to deceive a substantial segment of its audience; (4) the deception is material; (5) the defendant caused its false statement to enter interstate commerce; and (6) the plaintiff has been or is likely to be injured as a result of the false statement." *Newcal Indus., Inc. v. Ikon Office Solution*, 513 F.3d 1038, 1052 (9th Cir. 2008) (citing *Jarrow Formulas, Inc. v Nutrition Now, Inc.*, 304 F.3d 829 (9th Cir. 2002)).

In the instant summary judgment motion, the ABO contends that the AOS fails on the first element of false advertising—falsity. According to the ABO, the AOS has not created a genuine issue of material fact as to whether it is false or misleading for the ABO to use the terms "board certified" and "board certification."

A plaintiff can demonstrate falsity in one of two ways. First, the plaintiff can show that the statement was "literally false." *Southland Sod Farms v. Stover Seed Co.*, 108 F.3d 1134, 1139 (9th Cir. 1997) (citing *Castrol Inc. v. Pennzoil Co.*, 987 F.2d 939, 946 (3rd Cir. 1993). Second, the plaintiff can show that the statement "was literally true but likely to mislead or confuse customers." *Id.* In this case, the AOS has provided sufficient evidence to create a genuine dispute of material fact as to both theories of falsity.

### 1. Literal Falsity

"When evaluating whether an advertising claim is literally false, the claim must always be analyzed in its full context." *Southland Sod Farms*, 108 F.3d at 1139. Considering the full context, the fact finder must determine just what is claimed by the advertisement. *United Indus. Corp. v. Clorox Co.*, 140 F.3d 1175, 1181 (8th Cir. 1998). Next the fact finder must evaluate whether that claim is false. *Castrol Inc. v. Pennzoil Co.*, 987 F.2d 939, 944 (3d. Cir. 1993).

A statement can be literally false either "on its face" or by "necessary

O

**UNITED STATES DISTRICT COURT**
**CENTRAL DISTRICT OF CALIFORNIA**

**CIVIL MINUTES - GENERAL**

| Case No. | CV 10-03983 AHM (FFMx) | Date | June 12, 2012 |
|---|---|---|---|
| Title | AMERICAN OPTOMETRIC SOCIETY, INC. v. AMERICAN BOARD OF OPTOMETRY, INC. | | |

implication." *Southland Sod Farms*, 108 F.3d at 1139. To find an advertisement "literally false" by "necessary implication," the claim must be analyzed in its entirety to determine whether "the audience would recognize the claim as readily as if it had been explicitly stated." *Clorox Co. P.R. v. Proctor & Gamble Co.*, 228 F.3d 24, 34 (1st Cir.2000).

In this case, the AOS has proffered sufficient evidence to allow a trier or fact to conclude that (1) the ABO's use of the terms "board certified" and "board certification" conveys, by necessary implication, the claim that the ABO's certification carries the same weight and implies the same kind of expertise as the board certifications achieved by some physicians and that (2) in fact the ABO's board certification lacks the essential characteristics of the board certification received by physicians.

The AOS has proffered evidence showing that the ABO's advertisements convey, by necessary implication, the message that ABO board certification is comparable to the board certification achieved by some physicians. For example, one advertisement on the ABO's website states:

> Board Certification is a meaningful term to the public and to my patients. I now have the chance to participate in a process that other health professionals have had for many years.

(Pl.'s Ex. 29 at 2.)

The necessary implication of this advertisement is that ABO's board certification is the same "meaningful term" that describes "a process that other health professionals have had for many years." A second advertisement that appears on the same page confirms that the ABO's use of the term "board certification" conveys a special meaning:

> My residency has paid off in many ways—and now I can proudly tell my patients I am board certified. *It is a term they recognize*, and will help me stay current over the next ten years.

(Pl.'s Ex. 7 at 2.)(emphasis added).

O

**UNITED STATES DISTRICT COURT**
**CENTRAL DISTRICT OF CALIFORNIA**

**CIVIL MINUTES - GENERAL**

| Case No. | CV 10-03983 AHM (FFMx) | Date | June 12, 2012 |
|---|---|---|---|
| Title | AMERICAN OPTOMETRIC SOCIETY, INC. v. AMERICAN BOARD OF OPTOMETRY, INC. | | |

When considered in context with the previous advertisement, the implication is clear—board certification is a "term [patients] recognize" from the "process that other health professionals have had for many years."

The AOS also has proffered evidence sufficient to show that in fact the ABO's board certification program lacks the essential characteristics of board certification received by physicians. David Cockrell, the ABO's corporate representative, admitted that the ABO's certification does not demonstrate that an ABO certified optometrist is a specialist as compared to a non-ABO certified optometrist. (Ex. 11 at 118.) In addition, Cockrell admitted that ABO certification does not demonstrate that a certified optometrist has demonstrated that he or she has knowledge, skills and abilities that a non-certified optometrist does not have. (Ex. 11 at 120–21.) In contrast, in the case of physicians the American Board of Medical Specialties states that board certification denotes "exceptional expertise in a particular speciality and/or subspeciality of medical practice." (Pl.'s Ex. 20.)

Accordingly, the Court finds that the AOS has proffered sufficient evidence to create a genuine dispute of material fact as to the truth or falsity of the ABO's statements. Specifically, a jury or fact finder could reasonably find that the ABO's statements are literally false. In addition, as discussed below, the AOS creates a genuine dispute as to falsity in a second way—through evidence that the ABO's statements are likely to mislead or confuse customers.

### 2. Likelihood of Confusion

"Even if an advertisement is not literally false, relief is available under Lanham Act § 43(a) if it can be shown that the advertisement has misled, confused, or deceived the consuming public." *Southland Sod Farms*, 108 F.3d at 1140. Although reactions of the public are typically tested through the use of consumer surveys, *id.*, anecdotal evidence may also support an inference of customer confusion. *See Rosetta Stone Ltd. v. Google, Inc.,* 676 F.3d 144, 157–58 (4th Cir. 2012) (holding, in the context of a trademark dispute, that anecdotal evidence can support an inference of consumer confusion).

O

# UNITED STATES DISTRICT COURT
# CENTRAL DISTRICT OF CALIFORNIA

**CIVIL MINUTES - GENERAL**

| Case No. | CV 10-03983 AHM (FFMx) | Date | June 12, 2012 |
|---|---|---|---|
| Title | AMERICAN OPTOMETRIC SOCIETY, INC. v. AMERICAN BOARD OF OPTOMETRY, INC. | | |

     In this case, the AOS has two pieces of evidence that support an inference of consumer confusion. First, the AOS points to deposition testimony from Dr. Jeffery Weaver, the ABO's Executive Director. Dr. Weaver testified that even before the ABO had established its board certification program and even before it had disseminated any information about its certification program, members of the public began to call him asking for board certified optometrists. (Pl.'s Ex. 14 at 33–36.) This evidence indicates that customers attach a special meaning to the term board certification. A jury could conclude, based on this evidence, that customers believe that "board certification" denotes specialized experience, competence, and training.

     Second, the AOS's expert, Thomas Maronick, conducted a survey of eye care consumers. Maronick's survey shows that more than half of the surveyed consumers of eye care services believe that a board certified optometrist is more competent that one who is not. (Pl.'s Ex. 1 at 10.) In addition sixty-one percent of those surveyed believe that a board certified optometrist has more training. (Pl.'s Ex. 1 at 13.) The ABO contends that this survey is inadmissible under *Daubert* because it does not follow reliable principles of survey design. *See Daubert v. Merrell Dow Pharmaceuticals*, 509 U.S. 579 (1993). Accordingly, the ABO has moved to exclude Maronick's survey. (Def.'s Mot. *in Limine* No. 1, Dkt. 154.) The parties have not yet fully briefed this motion. Because it is not necessary to rely on Maronick's survey to find a factual basis warranting a finding of actual confusion, the Court will defer ruling on that motion. In any event, the AOS has offered sufficient evidence to create a genuine issue of material fact as to the truth or falsity of the ABO's use of the terms "board certified" and "board certification."

/ / /

O

# UNITED STATES DISTRICT COURT
# CENTRAL DISTRICT OF CALIFORNIA

**CIVIL MINUTES - GENERAL**

| Case No. | CV 10-03983 AHM (FFMx) | Date | June 12, 2012 |
|---|---|---|---|
| Title | AMERICAN OPTOMETRIC SOCIETY, INC. v. AMERICAN BOARD OF OPTOMETRY, INC. | | |

## IV. CONCLUSION

The Court GRANTS Defendant's motion for summary adjudication as to Plaintiff's state law causes of action but DENIES the motion as to Plaintiff's claim for false advertising under the Lanham Act.

                                                                                            :

Initials of Preparer          SMO